609 P.2d 171

Rudolph J. JAVERNICK, Plaintiff, Counter-defendant, and Respondent,

v.

Joseph H. SMITH and Sharon D. Smith, husband and wife, Defendants, Counterclaimants, and Appellants,

and

The Idaho First National Bank, a National Banking Association, and First American Title Company of Idaho, an Idaho corporation, Defendants.

Charles FINE and Walter Bonney, dba Bonney & Fine Painting, Plaintiffs, Counter-defendants and Respondents,

v.

Joseph H. SMITH and Sharon D. Smith, husband and wife, Defendants, Counterclaimants, and Appellants.

Joseph H. SMITH and Sharon D. Smith, husband and wife, Third Party Plaintiffs and Appellants,

v.

Rudolph J. JAVERNICK, dba Javernick Construction Co., Third Party Defendant and Respondent.

No. 12805.

Supreme Court of Idaho.

April 7, 1980.

Vernon K. Smith, Boise, for defendants, counterclaimants, and appellants.

E. Don Copple, Boise, for plaintiff, counter-defendant, and respondent.

BAKES, Justice.

This case consists of two actions brought to foreclose labor and materialmen's liens

on real property owned by the defendant appellants Smiths. The two liens were filed to secure claims by a general contractor, Javernick, and by a painting subcontractor, Bonney & Fine Painting, for money allegedly owing for material and labor used in construction of a custom built house for the defendant appellants Smiths. The district court entered judgment in favor of both plaintiffs and ordered foreclosure of the plaintiffs' labor and materialmen's liens. Defendant appellants Smiths appeal from the district court's judgment. We affirm.

In April, 1975, plaintiff respondent Javernick was asked to submit a bid for a house for the Smiths to be built on land owned by the Smiths. Javernick was given blueprints of the home drafted by the Smiths' architect from which he was to make his bid. The Smiths also wanted built-ins, panelling, columns, exposed beams, and a stairway and bannister constructed from hardwood and modeled after finished woodwork located in two older homes in Boise, and Javernick was shown the exemplar wood detail work and given photos of it to enable him to make a bid price.

Javernick computed a contract price from the plans and exemplars he examined and forwarded the proposal to the Smiths in April, 1975. In September, 1975, the Smiths decided to have Javernick build the house for them. At this time Javernick was told of some alterations the Smiths wanted incorporated into the plans, including changes in flooring, carpeting, additional detail work in the kitchen and the sewing room, and some adjustments to the floor plan. Javernick took a copy of the list of changes and reworked his estimate. He presented the Smiths his final written bid in early October. A contract containing Javernick's bid price of $86,709.00 was executed by the parties on October 6, 1975.

As soon as construction began, the Smiths decided upon several major changes in the house plans. They ordered a third bay built for the garage, enlargement of the second floor of the house, addition of trim detail on the exterior, and increased size of the inte-

rior molding, and addition of a bay window for the office portion of the house. As construction progressed the Smiths, and principally Mrs. Smith, ordered many other changes and additional items for the house. Javernick proceeded to make these changes as they were proposed. When the house was nearly completed, Javernick presented the Smiths with a detailed statement of the work done. The statement credited the Smiths with the contract price of work deleted at the Smiths' request and charged them for that work Javernick asserted was not included in the original contract price. The statement credited the Smiths with progress payments made to date and left a balance due on the house of $33,906.11.

The Smiths claimed that most of the items listed in Javernick's statement as "extras" had been incorporated into the building contract via the list of addenda given to Javernick in September, 1975, or were included in the contract price as a result of either Javernick's inspection of the exemplars in the Warm Springs Avenue homes or by inference from the type of work specified in the original plans. The Smiths also asserted that the written contract between the parties had a requirement that any modifications to that contract were to be in writing. They contended that Javernick, by not requiring written change orders for additional work done upon the Smiths' request, had acknowledged that the requests were within Javernick's contractual undertaking. After attempting without avail to reach a settlement of the dispute over the amount due on the house, Javernick ceased work on the project in July, 1976. He filed a labor and materialmen's lien against the property in September, 1976, and then filed this foreclosure action.

The painters Bonney and Fine were likewise unsuccessful in collecting a similar account for work which they performed at the request of the Smiths. They also filed a labor and materialmen's lien and foreclosure action against the Smiths.

The two lien foreclosure actions were consolidated for trial. The Smiths asserted counterclaims against the plaintiffs for poor

workmanship, damages resulting from delay in completion of the house, damages for slander of title resulting from the liens filed against the property, plus $10,000 in punitive damages.

A four-day court trial of the two cases was conducted in the district court. In addition to hearing the testimony of the witnesses, the district judge, at the request of the parties, inspected the Smith home. The court concluded that plaintiff Javernick was due a balance of $33,248.21, plus $4,750.00 in interest and attorney fees. He also found that plaintiffs Bonney and Fine were due $1,815.15 plus interest and attorney fees of $600.00. All defendant Smiths' counterclaims were denied.

The court made several findings in the course of its memorandum decision supporting its conclusion that the plaintiffs were entitled to foreclose their liens in the amount specified. Those findings included the following: (a) the parties' formal written contract was followed by many changes which either added to or deleted from the work specified in the original agreement; (b) the written contract requirement that change orders be written was completely waived by the parties' words and conduct during construction; (c) all charges for which the two plaintiffs made claim were charges that the defendants could reasonably expect as a result of the requested changes; (d) the two plaintiffs were entitled to the reasonable value of the extra work and materials which was occasioned by the Smiths' requests; (e) the defendants produced no evidence which would rebut the two plaintiffs' evidence indicating the reasonableness of the charges asserted for work done which was not within contemplation of the original written contract; (f) there was no evidence produced by the defendant which would support a finding that the house was not constructed in a good and workmanlike manner; (g) delay in completion of the house was occasioned by the defendants' own acts in making requests for additional work; and (h) the house was substantially complete on September 3, 1976, the date the two liens were filed against the Smith property.

Defendants appellants Smiths specify twenty-six issues in bringing this appeal. The major points of their appeal are that the district court erred in concluding that the "extras" for which Javernick and Bonney & Fine sought payment were not included in the original contract price; in calculating the credits due the Smiths for contract work eliminated or modified by the parties; in finding that the house was constructed in a good and workmanlike manner and was substantially complete in September, 1976; in finding that the delay in the completion of the house was due to the Smiths' own acts; in concluding that plaintiffs Bonney and Fine were entitled to assert claims against the Smiths; in enforcing the two plaintiffs' liens against the Smiths' property; and in allowing foreclosure of the liens pending this appeal.

The crux of the Smiths' arguments on appeal is that the district court's findings are at variance with the evidence regarding the scope of the parties' written contract and the quality and value of the work done by the plaintiffs. However, the task of weighing evidence and finding facts is within the province of the trial court, and not of this Court. This Court will not set aside findings of fact made by the trial court unless they are clearly erroneous, and we will give due regard to the opportunity of the trial court to weigh conflicting testimony and to judge the credibility of witnesses. I.R.C.P. 52(a). *See, e. g., Roemer v. Green Pastures Farms, Inc.*, 97 Idaho 591, 548 P.2d 857 (1976). We have examined the rather extensive record of the proceedings below and conclude that the district court did not err in ordering foreclosure of the plaintiffs' labor and materialmen's liens.

Affirmed. Costs awarded to respondent.

DONALDSON, C. J., and SHEPARD, McFADDEN and BISTLINE, JJ., concur.