701 P.2d 294

**Dean B. PRICE, Trustee for Stella B. Price; Carma J. Price, Jack Clark and Lois Clark, Plaintiffs-Respondents,**

v.

**AZTEC LIMITED, INC., an Idaho corporation, Defendant-Appellant.**

**No. 14193.**

Court of Appeals of Idaho.

May 30, 1985.

R.M. Whittier of Whittier & Souza, Pocatello, for defendant-appellant.

Ralph H. Jones, Jr. of Jones, Pomeroy & Jones, Pocatello, for plaintiffs-respondents.

SWANSTROM, Judge.

Aztec Limited, Inc. appeals from a district court judgment awarding damages to the Price family for destruction of irrigation ditches supplying water from an irrigation canal to the Prices' land. The issues on appeal are whether, as Aztec contends, the trial court committed error in: (1) allowing a second amendment of the pleadings at the start of the trial; (2) holding Aztec liable for the act of third persons; (3) denying a motion for nonsuit and entering judgment against Aztec for the loss of rental and the cost of constructing a headgate; (4) admitting certain exhibits in evidence and (5) awarding attorney fees to the Prices. We hold that no error was committed and we affirm.

Aztec purchased and developed land now known as Alturas Park Subdivision abutting the east side of the Prices' farm land and sold portions of it as individual lots. Before construction of this subdivision, two irrigation ditches crossed the land being developed. Both ditches originated at a headgate near the northeast corner of the property. One ditch crossed the north end of the subdivision to the Price land. The other ditch ran down the east side of the property and then crossed the center of the development. During construction in 1976, Aztec destroyed the center ditch. After receiving complaints from the Price family and their farm tenant, Aztec constructed another ditch along the east boundary of the Prices' farm land, running half way down from the north ditch to connect with what remained of the center ditch. This ditch was intended to convey water to the southern part of the Prices' property which previously had been irrigated by the center ditch. However, the new ditch did not effectively water the farm property. A former lessee of the Prices testified that, after the destruction of the center ditch, it took two weeks to irrigate what had previously

taken two days. Late in 1977 or early in 1978, after the lots in the subdivision were sold, the north ditch crossing the subdivision was partially destroyed by lot owners, Mr. and Mrs. Hirschi. This prevented any water from reaching the ditches on the Price property. In an effort to get water to the farm through the new ditch constructed by Aztec, the Prices had a headgate installed in the northeast corner of their property. This headgate did not develop enough water to irrigate the property. As a result, the Prices contended they were unable to rent the property in 1978.

The district court, sitting without a jury, found that Aztec's president, Roger Seaton, had advised the Hirschis that they could remove the north ditch. The court determined that due to Seaton's conduct involving the removal of the ditches, Aztec was liable to the Prices for the loss of rental in the amount of $1,960 and for the $1,850.04 cost of installing the headgate. In addition, the court further awarded attorney fees and costs to the Price family.

■ Aztec first asserts the trial court erred in allowing plaintiffs to amend their complaint at the start of trial. This issue merits little discussion. At the start of the trial plaintiffs moved to amend the caption of their complaint to show Dean Price's status as trustee for his mother, Stella Price. Plaintiffs also moved to drop a named plaintiff from the caption because that party had no present interest in the property or in the suit. The court granted the motion but offered to delay the trial if Aztec could demonstrate any prejudice would result to it. However, Aztec neither requested a continuance nor made a showing of prejudice before the district court and has failed to make such a showing to us. We hold that no error was committed in allowing the amendment.

Aztec next asserts that the evidence was insufficient to support a finding of liability. At trial, Mr. and Mrs. Hirschi testified that Aztec's president, Roger Seaton, told them they could go ahead and cover the ditch. Seaton denied that he told them they could fill in the ditch without replacing it with pipe. The court determined that the covenants and plats of the subdivision filed by Aztec did not identify the destroyed ditch as an easement and further, that the ditch was removed by the Hirschis, relying upon representations of Roger Seaton. The court concluded that Aztec was responsible for the partial destruction of the ditch on the north end to the injury of the Price family.

■ This conclusion involves a legal question as to whether Aztec, through the conduct of its president, Roger Seaton, can be held liable for the destruction of the north ditch by the Hirschis. First, it is noted that Aztec, as the employer of Seaton, is responsible for Seaton's actions made in the scope of his employment. At trial it was uncontested that Seaton was acting in the scope of his employment. Counsel for Aztec admitted that Seaton was acting as an officer of Aztec when he spoke to the Hirschis. Secondly, it is well established in Idaho that a person may be liable as a contributing tort-feasor, joint tort-feasor or cotrespasser for harm resulting to a third person from the tortious conduct of another. *Smith v. Thompson*, 103 Idaho 909, 655 P.2d 116 (Ct.App.1982). *See, e.g., Lorang v. Hays*, 69 Idaho 440, 209 P.2d 733 (1949); *Bailey v. Idaho Irrigation Co. Ltd.*, 39 Idaho 354, 227 P. 1055 (1924). Further, it has been held "all persons who command, instigate, encourage, advise, countenance, co-operate in, aid or abet the commission of a trespass by another, are cotrespassers with the person committing the trespass...." *Bailey v. Idaho Irrigation Co. Ltd.*, 39 Idaho at 358, 227 P. at 1056.

■ When the tortious conduct is the cause of a single and indivisible harm, each contributing tort-feasor is liable to the same extent and in the same manner as if they had performed the wrongful act themselves; i.e., they are jointly and severally liable. *Smith v. Thompson, supra. See generally* RESTATEMENT (Second) OF TORTS § 875, 876 (1977); and cases collected at 74 AM.JUR.2d *Torts* § 66 (1974). Each tort-feasor is liable for the whole

damage at the option of the injured party. *Spencer v. Spencer,* 91 Idaho 880, 434 P.2d 98 (1967). The rule of joint and several liability also prevails where tort-feasors act in concert in the execution of the common purpose. The tort liability of persons acting in concert is expressed in RESTATEMENT (Second) OF TORTS § 876 (1979):

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he...
>
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself,....

In the Restatement's comments on clause b it is said that if the encouragement or assistance referred to is a substantial factor in causing the resulting tort, then the one giving it is himself a tort-feasor and is responsible for the consequences of the other's act. *See also American Family Mutual Insurance Co. v. Grim,* 201 Kan. 340, 440 P.2d 621 (1968).

■ The Prices are seeking to impose liability upon Aztec for allegedly advising or giving assurances to the Hirschis that they could remove the ditch in their backyard. To make Aztec liable as having encouraged the trespass by remarks made on prior occasions, these words must have had a direct relation to the trespass, and must have been calculated and intended to produce it. *Smith v. Thompson, supra.* Aztec, as the former owner and developer of the Alturas Park Subdivision, had a duty to inform subsequent buyers of the Prices' irrigation easement. The court found that the covenants and plats of the subdivision did not clearly disclose this ditch as an easement. Seaton, upon being asked about the possibility of destroying the irrigation ditch, had a duty to inform the Hirschis that it was an easement that could not be removed unilaterally. Seaton's affirmative response to their request can be viewed as a breach of duty. It can be reasonably concluded from the record that Seaton's

statements were a direct and substantial factor in causing the Hirschis' wrongful conduct.

■ The testimony of the Hirschis and Seaton conflicts as to what was said by Seaton. An appellate court is precluded from substituting its opinion of witnesses' credibility for that of the trier of fact. *Erhardt v. Leonard,* 104 Idaho 197, 657 P.2d 494 (Ct.App.1983). Where evidence is conflicting, the task of weighing such evidence falls within the province of the trial court. *Rasmussen v. Martin,* 104 Idaho 401, 659 P.2d 155 (Ct.App.1983). Findings which are supported by substantial and competent, though conflicting, evidence will not be disturbed on appeal. *Tippett v. Bayman,* 105 Idaho 744, 672 P.2d 1074 (Ct.App.1983); I.R.C.P. 52(a). In this case, the trial court was sitting as the trier of fact and made various findings. These findings of fact will not be set aside unless they are clearly erroneous and due regard will be given "to the opportunity of the trial court to weigh conflicting testimony and to judge the credibility of the witnesses." *Javernick v. Smith,* 101 Idaho 104, 106, 609 P.2d 171, 173 (1980).

■ Counsel for Aztec cites *Jephson v. Ambuel,* 93 Idaho 790, 473 P.2d 932 (1970) for the proposition that testimony of oral extra judicial admissions should be viewed with caution. However, in that case, the extra judicial statement was merely a general conclusion of fault and provided no particular facts on which a jury could base a finding of liability. The court noted that if the statement served to establish a fact upon which a jury's conclusion of fault could rest then it was admissible as a basis for a jury's verdict. We hold in this case that the disputed extra judicial statement was evidence that Seaton did advise the Hirschis to "go ahead" and remove the ditch. Therefore, it is a sufficient basis to rest a finding of liability.[1]

---

1. At the close of plaintiffs' case Aztec made a motion for "nonsuit;" actually a motion for involuntary dismissal under I.R.C.P. 41(b). Aztec asserts that the trial court erred in denying the motion. We do not need to discuss this alleged error because if, as is the case here, defendant does not renew the motion at the close of all of the evidence, the right to assign

Next Aztec alleges as error the admission of a hand-drawn sketch showing the ditches across the Alturas Park Subdivision and the Prices' farm. The sketch was prepared by Dean Price prior to testifying. This assignment of error is unsupported by either cited authority or argument in appellant's brief and therefore will not be reviewed on appeal. *Voyles v. City of Nampa*, 97 Idaho 597, 548 P.2d 1217 (1976); *Perry Plumbing Co. v. Schuler*, 96 Idaho 494, 531 P.2d 584 (1975); I.A.R. 35(6).

Aztec next argues that the bill to the Prices for the installation of a new headgate should not have been admitted due to the lack of foundation, as there was no testimony that a headgate was necessary to remedy any lack of water caused by Aztec. However, Dean Price testified that following his own personal studies, and consulting other professionals in irrigation matters, he concluded that the new headgate was the best and least expensive solution to their lack of water. In effect, he testified that it was not feasible to attempt to restore and maintain the ditch through the several lots in the north end of the subdivision. He opted instead to change the point of diversion from the northeast corner of the subdivision to the northeast corner of the Price property. This was entirely logical since Aztec, by destroying the center ditch first, had made it necessary to construct the new ditch leading south from the northeast corner of the Price property. This new ditch proved to be inadequate to convey a "full head" of irrigation water to the southern part of the Price property, as farmers of the property had been able to do before destruction of the center ditch by Aztec. Installation of the new headgate by the Prices was a reasonable effort to overcome the problems created by the destruction of *both* of their former ditches, one by Aztec and one by the Hirschis. The ultimate injury done to the Prices was the complete loss of water for their property. It is clear that Aztec's direct action caused a partial loss of water. The Hirschis' actions completed the injury. Under these circumstances Aztec cannot escape liability for the damages which naturally resulted from its actions. We hold the district court did not err in admitting the bill for the new headgate in evidence. Nor do we find it was error to allow damages for the cost of this item.

The final issue concerns attorney fees. First, Aztec claims that the trial judge erred in awarding attorney fees to the Price family at trial under I.C. § 12–121. Aztec contends that such an award should not have been made absent a showing that its defense of the case was unreasonable, frivolous or without foundation, as required by I.R.C.P. 54(e)(1). The record shows that this case arose prior to the effective date of rule 54(e)(1). Therefore the rule is inapplicable. *White v. Rehn*, 103 Idaho 1, 644 P.2d 323 (1982). The award of attorney fees was within the discretion of the trial judge under I.C. § 12–121 and Aztec has failed to show an abuse of that discretion. We affirm the award.

Next, both parties seek an award of attorney fees under I.C. § 12–121 for participation in the present appeal. Applying the rule set out in *Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 591 P.2d 1078 (1979), which governs attorney fees on appeal under I.C. § 12–121, we hold that this appeal was brought and pursued frivolously, unreasonably and without foundation. Accordingly, we award attorney fees to the Price family. *See* I.R.C.P. 54(e)(1).

Judgment affirmed. Attorney fees and costs to respondents.

WALTERS, C.J., and HURLBUTT, J. Pro Tem., concur.

---

error as to the denial of such motion is waived. *DeAtley Corp. v. Otto*, 95 Idaho 586, 513 P.2d 638 (1973). If a defendant does renew the motion after electing to put on its evidence, "on appeal from a final judgment [an appellate court in ruling on the motion] will look to all of the evidence and not merely that put in as part of the plaintiff's case." 9 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2371 at 221 (1971), quoted in *Pollard v. Land West, Inc.*, 96 Idaho 274, 279, 526 P.2d 1110, 1115 (1974); *Miller Construction Company v. Stresstek*, 108 Idaho 187, 697 P.2d 1201 (Ct. App.1985).